IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LESLIE MOMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 3:16cv754-WKW |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Leslie Moman's *pro se* motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. Doc. # 1.[1] For the reasons that follow, the court concludes that Moman's § 2255 motion should be denied without an evidentiary hearing and this case dismissed with prejudice.

## I. BACKGROUND

In July 2014, Moman was indicted on charges of conspiracy to distribute methamphetamine, aiding and abetting the distribution of methamphetamine, and using a communication facility to further a drug distribution conspiracy. Doc. # 6-1. Six other codefendants were charged in the seven-count indictment.[2] *Id.*

---

[1] References to document numbers (Doc(s). #) are to the pleadings, motions, and other materials in the court file as designated by the Clerk of Court on the docket sheet in this action. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

[2] The named codefendants were William Eugene Thomas, Vanessa Lee Crowe, Michael Bradley Gosa, Shelly Carol Harrington, Wayne Clyde Terry, and John Eric Wakefield. Doc. # 6-1.

Moman and her lawyer negotiated a plea agreement with the government in which Moman agreed (1) to plead guilty to Count 5 of the indictment, aiding and abetting the distribution of methamphetamine,[3] and (2) to waive her rights to appeal and collaterally attack her sentence with limited exceptions. Doc. # 6-2 at 1–6. At a change of plea hearing on October 27, 2014, Moman pleaded guilty to Count 5. Doc. # 6-3. Following a sentencing hearing on November 23, 2015, the district court sentenced Moman to 108 months in prison. Docs. # 6-5 & 6-6. Moman did not appeal.

On September 2, 2106, Moman filed this § 2255 motion arguing she is entitled to a mitigating role reduction in her offense level in light of retroactive changes to § 3B1.2 of the United States Sentencing Guidelines. Doc. # 1.

In its response to Moman's § 2255 motion, the government argues that Moman's claim is procedurally defaulted because she failed to raise it in the district court or on direct appeal. Doc. # 6 at 6–7. Ordinarily, where a claim is not advanced in the trial court or on appeal, it is deemed procedurally barred in a § 2255 proceeding. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Reece v. United States,* 119 F.3d 1462, 1467 n.9 (11th Cir. 1997); *Mills v. United States*, 36 F.3d 1052, 1055–56 (11th Cir. 1994). A petitioner can avoid this procedural bar by showing both cause for failing to raise the claim on direct appeal and actual prejudice arising from that failure. *See United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Mills*, 36 F.3d at 1055.

---

[3] *See* 21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2.

In her reply to the government's response to her § 2255 motion, Moman asserts the ineffective assistance of her counsel, for failing to seek a § 3B1.2 mitigating role reduction at sentencing, as cause excusing the procedural default of her substantive claim. Doc. # 10 at 3–5. Ineffective assistance of counsel may satisfy the cause exception to a procedural bar, but only if the claim of ineffective assistance is meritorious. *See Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). To determine if the claim is meritorious, a court must decide whether the arguments the petitioner alleges counsel failed to raise were significant enough to have affected the outcome of the proceedings. *See Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988). Thus, this court faces the question whether Moman's counsel rendered ineffective assistance by failing to seek a § 3B1.2 mitigating role reduction at Moman's sentencing.

## II. DISCUSSION

### A. *Strickland* Standard on Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that his counsel's performance was deficient, i.e., that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show he suffered prejudice as a result of the deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *see Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will avoid second-guessing counsel's performance. *Id*. The prejudice prong, moreover, does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993). Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland,* 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697.

**B.     Mitigating Role Reduction Under U.S.S.G. § 3B1.2**

The Sentencing Guidelines provide for a decrease in a defendant's offense level when the defendant plays a minimal or minor role in any criminal activity. Specifically, § 3B1.2 provides:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a)     If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b)     If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.

An application note to § 3B1.2(a) provides that the minimal role reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of the group. Under this provision the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently." U.S.S.G. § 3B1.2, cmnt. n. 4. An application note to § 3B1.2(b) provides that the minor role reduction applies to a defendant "who is less culpable than most other participants in the criminal activity but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmnt. n. 5. In alleging that her counsel was ineffective for failing to seek a mitigating role reduction at sentencing, Moman asserts that she is entitled to either a four-level minimal role reduction under § 3B1.2(a) or a two-level minor role reduction under § 3B1.2(a). Doc. # 1 at 2; Doc. # 10 at 3–5.

Prior to Moman's November 23, 2015 sentencing, the United States Sentencing Commission revised the commentary to § 3B1.2 but not the language of the actual guidelines provision. *See* U.S.S.G. Supp. App. C., Amend. 794 (discussing the revised commentary). Amendment 794, which became effective on November 1, 2015, made several revisions to the commentary, including introducing a non-exhaustive list of factors that a sentencing court should consider when determining whether to apply a mitigating role reduction. The listed factors introduced in Amendment 794 are:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;

5

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, cmnt. n.3(C).  The Commission also added commentary that "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." *Id.*  Rather, such a defendant may receive a mitigating role adjustment if he is "substantially less culpable than the average participant in the criminal activity." *Id.*

The Eleventh Circuit has held that Amendment 794 is a clarifying amendment, meaning it only clarifies the factors a court should consider for a mitigating role adjustment and did not substantively change § 3B1.2, and therefore the amendment applies retroactively only on direct appeal.  *United States v. Cruickshank*, 837 F.3d 1182, 1194 (11th Cir. 2016).  However, the Eleventh Circuit also stated that the revisions in Amendment 794 "continue to embrace the approach" that the Court took in its "leading case" regarding § 3B1.2, *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999). *Id.* at 1192–94.

Moman maintains that a mitigating role reduction is warranted in her case because, she says, she was "substantially less culpable than the other co-defendants on her case," specifically because "[her] role in the conspiracy was less [than her] other co-defendants" and she "only had a minor participation for a small amount of time." Doc. # 1 at 1.  She

6

appears to argue that Amendment 794 was implemented after her sentencing and that the court should apply it retroactively to reduce her sentence. *Id*. However, as noted above, Amendment 794 went into effect on November 1, 2015, prior to Moman's sentencing hearing on November 23, 2015. Although Moman's PSI was completed on October 26, 2015, the 2015 Sentencing Guidelines Manual, incorporating Amendment 794, was used to calculate her sentence. *See* Doc. # 6-4 at 14. Thus, her sentence was calculated and considered by the district court under the updated version of the commentary to § 3B1.2.

C. **Analysis of Ineffective Assistance Claim**

The Eleventh Circuit has stated that a mitigating role reduction only makes sense analytically if the defendant can establish that her role was minor compared to the relevant conduct attributed to her. *De Varon*, 175 F.3d at 940–41. Two principles guide this analysis: (1) "the defendant's role in the relevant conduct for which she has been held accountable at sentencing," and (2) "her role as compared to that of other participants in her relevant conduct." *Id.* at 940. As to the first prong of this analysis, "[o]nly if the defendant can establish that she played a relatively minor role in the conduct for which she has already been held accountable—not a minor role in any larger criminal conspiracy— should the district court grant a downward adjustment for minor role in the offense." *Id*. at 944. As to the second prong, the district court should look at other participants only to the extent that they (1) are identifiable or discernible from the evidence, and (2) were involved in the relevant conduct attributed to the defendant. *Id*. As provided in an application note to § 3B1.2, the determination whether to apply a mitigating role reduction

7

"is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." § 3B1.2, cmnt. n.3(C).

Here, the government dismissed Count 1 against Moman, a conspiracy count relating to her alleged participation, with six other codefendants, in a drug-dealing operation involving large amounts of methamphetamine. Moman pleaded guilty only to aiding and abetting the distribution of methamphetamine, the charge in Count 5 of the indictment. The allegations underlying Count 5 centered on Moman's involvement in methamphetamine distribution in September 2013. *See* Doc. # 6-4 at 8–13; Doc. # 6-5 at 5–6. Moman's presentence investigation report ("PSI") indicated that she aided and abetted William Eugene Thomas, the major supplier in the conspiracy, in the attempted delivery of 494 grams of "ice" (methamphetamine of at least 80% purity) to another distributor, Michael Bradley Gosa, by making phone calls to Shelly Harrington instructing her to keep Thomas apprised of the status of the transaction, where Harrington was supposed to deliver the drugs to Gosa and receive payment, which she was supposed to bring back to Thomas. Doc. # 6-4 at 8–9. Law enforcement officers arrested Harrington with a shopping bag containing the ice just before she delivered it to Gosa. *Id*. at 9. Moman made the phone calls to Harrington from a motel room where she and Thomas were staying, and where Thomas had a large quantity of methamphetamine he was dealing. *Id*.

When law enforcement officers set up surveillance of the motel room, they observed Moman open a window and place a CCTV camera in it. Doc. # 6-4 at 10. They also observed Moman keeping continuous watch at the window. *Id.* The officers then saw Moman and Thomas leave the motel room together and get in a truck driven by Wayne

8

Terry. *Id*. The officers followed the truck and activated their flashing lights to attempt a traffic stop of the truck. *Id*. However, the truck sped off and did not stop. *Id*. During the ensuing chase, officers saw Thomas throwing clear plastic bags containing what turned out to be methamphetamine from the truck's passenger window. *Id.* at 10–11. At one point, Thomas jumped from the truck and fled on foot, while the truck continued on. *Id.*

When officers finally stopped the truck, they arrested Moman and Terry. Doc. # 6-4 at 10. A search of Moman uncovered cash and a key to the motel room in her bra. *Id.* Terry was found with $1,200 in cash on his person. *Id.* Officers also discovered 127 hydrocodone pills in Moman's purse on the floorboard of the truck. *Id.* at 10–11. The officers also recovered several of the bags of methamphetamine that Thomas had tossed from the truck during the chase. *Id*. at 11. A total of 61.35 grams of methamphetamine (actual) was recovered from the roadway. *Id.*

The PSI, which was adopted by the district court, attributed to Moman 494 grams of ice, seized from the bag Harrington attempted to deliver to Gosa; 61.35 grams of methamphetamine (actual) recovered from the roadway following the chase of the truck; and 127 hydrocodone pills recovered from Moman's purse. Doc. # 6-4 at 13–15. The drug amounts were converted into their marijuana equivalencies, and the total converted quantities formed the basis of Moman's base offense level of 34.[4] *Id.* at 14–15. Also

---

[4] Pursuant to U.S.S.G. § 2D1.1, cmnt. n.8, when a defendant is accountable for different types of controlled substances, the drugs must be converted to their marijuana equivalents in order to obtain a single offense level. The marijuana equivalency of 494 grams of ice is 9,880 kg; for 61.35 grams of methamphetamine (actual), it is 1,226 kg; and for 127 hydrocodone pills, it is .127 kg. *See* Doc. # 6-4 at 14–15.

attributed to Moman, in a two-level enhancement,[5] was a firearm that William Terry told officers Thomas had with him during the pursuit of the truck, when Moman was also a passenger. *Id*. at 11 & 15.

Here, there was a close convergence between Moman's conduct and the conduct for which she was held accountable. Her base offense level was based entirely on drug amounts that could be linked to her by events occurring on the date of her arrest—whether through her attempt to facilitate the transaction involving Harrington's delivery of the ice from Thomas to Gosa while staying in the motel room where Thomas was conducting his drug dealing, where her conduct—phone calls to Harrington, placing a CCTV camera in the window and keeping watch—indicated she was assisting Thomas with his operation; through her accompaniment of Thomas in the truck from which Thomas tossed bags of methamphetamine during the chase by police; or through her possession of the hydrocodone found in her purse. No other drug quantities were factored into Moman's offense level. Further, Moman was present with Thomas in the truck during the chase when Thomas possessed a firearm. Although Moman may have been less culpable than some of her codefendants in the overall conspiracy (certainly Thomas), she has not shown that she played a relatively minor role in the relevant conduct for which she was held accountable at sentencing.

The record does not reflect the minor or minimal role that Moman contends. Therefore, Moman cannot establish a reasonable probability that had counsel argued for a

---

[5] *See* U.S.S.G. § 2D1.1(b)(1).

10

minor or minimal role reduction, her sentence would have been different.  At sentencing, Moman's counsel moved for a downward variance on Moman's behalf, arguing Moman had a limited role in the drug conspiracy, was one of the least culpable defendants, and only assisted Thomas in his drug dealing because he gave her methamphetamine to feed her methamphetamine addiction.  Doc. # 6-5 at 5–6.  The district court denied the downward variance motion, but stated it would sentence Moman at the lowest end of the calculated guideline range.  *Id*. at 10.  The district court's denial of the downward variance motion strongly suggests it would not have been receptive to an argument that Moman should receive a minimal role or minor role adjustment reducing her offense level and guideline range.

For the reasons stated above, this court concludes that Moman has failed to demonstrate that her counsel's failure to argue that she was entitled to a mitigating role reduction at sentencing was objectively unreasonable or prejudicial to her case.  Therefore, she does not establish cause for her procedural default and is entitled to no relief on her claim.

### III.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Moman be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that **on or before October 17, 2018**, the parties may file objections to the Recommendation.  A party must specifically identify the factual findings and legal

conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objections to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of factual and legal issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

Done this 3rd day of October, 2018.

_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE